# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# SHREVEPORT DIVISION

| | |
|---|---|
| CHRISTOPHER MACE | CIVIL ACTION NO. 22-1559-P |
| VERSUS | CHIEF JUDGE EDWARDS |
| DUSTY WILLIAMS, ET AL. | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

## STATEMENT OF CLAIM

Before the court is a civil rights complaint filed in forma pauperis by pro se plaintiff Christopher Mace ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was received and filed in this court on June 8, 2022. He is currently incarcerated at the Sabine Parish Detention Center but claims his civil rights were violated by prison officials while incarcerated at the Claiborne Parish Detention Center ("CPDC") in Homer, Louisiana. Plaintiff names Warden Dusty Williams, Assistant Warden Steve Risner, and Nurse Michelle Cromens as defendants.

Plaintiff claims he was transferred to the CPDC on June 7, 2021, and all his personal property and legal work were taken from him at intake. He states that CPDC had a "no paper-no book" policy for all new intakes, and Steve Risner was responsible for implementing this policy, regardless of state law.

Plaintiff claims that on June 9, 2021, he was not present when his property was searched and seized.  He claims he was not provided an inventory sheet and confiscation sheet as required by state law.  He claims he was not given any options regarding his property, including sending it home, donating it, or destroying it.  He claims his property included pictures of his family members, letters from his family members, items from his deceased mother, and numerous other items.  He claims his property also included his legal work and three law books.

Plaintiff states he was given one laundry bag containing some of his clothes and hygiene items from his personal property.  He admits he was told that he could copy his legal work and books for ten cents a page.

Plaintiff states that on April 4, 2022, Warden Dusty Williams posted a notice in the dorms stating that DOC inmates had seven days to send home all confiscated personal property or it would be destroyed per DOC guidelines.  He signed two property release forms releasing his property to his uncle.  He claims that on April 8, 2022, his uncle came to CPDC to collect his property, and he was given a brown paper bag with one pair of sweatpants, one pair of shoes, and one t-shirt.  He claims CPDC lost or destroyed the remainder of his personal property that was taken.  He claims that on June 22, 2022, Dusty Williams admitted to him that the building where the inmates' personal property was stored had a roof cave in and all property was thrown away.  He claims that on July 23, 2022, Dusty Williams again said that all the property was destroyed.

Plaintiff claims the law library was insufficient and as a result he missed two filing deadlines regarding his application for post-conviction relief. He claims he had to write his own supervisory writ because there were no properly trained law library clerks. He claims there were no tables in the library where inmates could sit and research. He claims a layman could not look up cases or statutes and could not Shepardize case law. He claims that when there was an inmate counsel, he helped 550 inmates and took forever to call him. He claims he possibly missed a third deadline regarding his application for post-conviction relief because the inmate counsel was locked up on May 25, 2022 and transferred on May 26, 2022. He claims that after the inmate counsel transferred, there was no inmate counsel or access to a law library.

Plaintiff claims he was denied medical and mental health treatment. He claims he requested mental health treatment from a trained professional who was either a counselor or a chaplain. He claims he requested to speak to a mental health counselor because of his grief caused by the loss of his parents six days apart while he was incarcerated, the stress of his children crying and acting out because there were no contact visits, and the stress of trying to get the class he needed for parole. He claims the stress caused him to lose his appetite and sleep. He also claims the stress caused him to vomit. He claims he chewed his nails because of the anxiety caused by the policies of Warden Williams and the behavior of the staff. He admits he received treatment from Dr. Camielle and Nurse Smith in September of 2021. He claims Dr. Camielle counseled him via a videocall, prescribed

Elavil[1] for him, and ordered Nurse Smith to set up counseling for him.  He claims Nurse Smith told the doctor that she would speak with the Warden because the facility no longer had a contract with mental health.

Plaintiff claims that on May 20, 2022, he made a sick call because he had chronic diarrhea for three months caused by the patties served in the chow hall and mental health issues.  He claims Nurse Michelle told him there would be no mental health treatment because the facility did not have a mental health doctor due to the cost.  He claims Nurse Michelle also denied him a special diet.  He claims Nurse Michelle then sent him to the dorm without taking his vitals, examining him, or addressing his chronic diarrhea.  He claims Nurse Michelle did not schedule a doctor's appointment for him.  He claims he was charged $7.00 for the sick call fee.   Plaintiff admits that on June 8, 2022, he was offered anti-diarrhea medication which he refused.

Plaintiff claims his privacy and HIPAA rights were violated during his May 20, 2022 sick call.  He claims Nurse Michelle had sex offender/trusty Joshua Lofton present during the sick call.  He claims Lofton told Nurse Michelle what was in his medical file. He also claims Lofton was present on June 8, 2022 during the discussion of his grievance in the administrative remedy procedure.  He alleges that on June 12, 2022, Lofton was heard by another inmate discussing his request for mental health and his grievance about the medical department.

---

[1] Elavil is a prescription medicine used to treat symptoms of depression. See https://www.mayoclinic.org/drugs-supplements/amitriptyline-oral-route/description/drg-20072061.

Plaintiff claims the facility takes an exorbitant amount of time to process standard first class mail because of the no paper/no book policy. He claims Captain Guss[2] opens and reads every letter. He admits that it is acceptable for Captain Guss to open and read every letter.

Plaintiff claims mail has been lost. He claims Steve Risner blames the U.S. Postal Service for the lost mail in his responses to his complaints.

Plaintiff claims legal/privileged mail is not processed correctly. He claims that before scanning the mail to put on the kiosk, privileged mail is typically brought to the dorms and distributed by a trusty. He claims trusties Lofton and Crowley are allowed to hand out mail to inmates without verifying their identity.

Plaintiff claims that on November 27, 2021, C/O Dudley delivered his legal mail to him and had him sign for a letter that was in a blank envelope that said "opened, copied, unread and placed in your file." Plaintiff claims the legal mail was opened without him being present. He claims that on May 30, 2022, his legal mail was opened, scanned and put on the electronic kiosk without him being present.

Plaintiff claims mail sent to him which was postmarked on July 19, 2021 was not received until July 28, 2021, postmarked on September 10, 2021 was not received until November 2, 2021, postmarked on October 12, 2021 was not received until November 16, 2021, and postmarked on November 17, 2021 was not received until December 27, 2021.

---

[2] Plaintiff does not name Captain Guss as a defendant.

He claims the delays caused him to miss deadlines with the courts. He also claims his IRS stimulus check was delayed.

Plaintiff claims that on May 30, 2022, his privileged mail from the IRS which included forms he had to return was opened outside his presence, scanned, and put on the kiosk. He claims this happened to no other inmates in the dorm and their letters were delivered by the trusties. He claims he brought this issue to the attention of shift supervisor Lt. Dill and he said that there was no one to scan it because it was Memorial Day. He claims that on June 1, 2022, he wrote a request to the Warden, and he responded on June 3, 2022 that "I believe your documents were located and given to you." Plaintiff claims his response had nothing to do with his legal and/or privileged mail. He believes these actions were in retaliation for his grievance filed in the administrative remedy procedure on May 23, 2022 regarding the medical department.

Plaintiff claims the facility does not provide basic supplies and hygiene items such as soap, toothpaste, toothbrushes, and razors to all DOC inmates per the policy implemented by Warden Williams. He admits inmates are provided with toilet tissue. He also claims basic clothing such as socks, underwear, boxers, t-shirts, and slippers are not provided. He claims inmates are only provided with one orange jumpsuit. He claims that when he asked about his "state issue," he was told to buy it at the commissary. He claims inmates are denied meals and medications if they are not wearing socks and twice, he had to borrow another inmate's socks.

Plaintiff claims the facility denies contact visits and only allows electronic video visits. He claims the video visits require a monetary cost of 50 cents a minute and software to be installed on the electronic devices of his family and friends. He claims he was denied contact with his family and friends and his family ties were weakened. He claims he was unable to have an intimate relationship with his children.

Plaintiff claims that on June 8, 2022, he was denied due process in the administrative remedy procedure when Michelle Cromens who was identified in his grievance and trusty Lofton "covered" it with him. He claims Cromens was irritated and cursed at him because of the claims he raised. He claims he appealed the response to his grievance on June 22, 2022.

Plaintiff claims he was retaliated against because he filed this lawsuit. He claims that on June 22, 2022, Warden Dusty Williams threatened him about the lawsuit. He claims that on July 19, 2022, he requested an update on the appealed grievance. He claims he received two letters from this court and received an emergency transfer to Bayou Dorcheat Correctional Center. He claims that on July 20, 2022, he was transferred back to CPDC and locked in a suicide cell. He claims that on July 23, 2022, Warden Williams released him into the same dorm he was transferred from on July 19, 2022. He claims that on August 15, 2022, Risner intercepted a motion destined for his court. He claims that on August 19, 2022, Risner retaliated against him with a third transfer in 30 days.

Plaintiff claims he was denied access to books, magazines or newspapers even sent directly from the publisher or bookstore. He claims that on August 11, 2022, CPDC

blocked all local new channels on all dorm televisions.  He claims CPDC unblocked all local news channels on August 17, 2022.

Accordingly, Plaintiff seeks monetary damages and injunctive relief.

## LAW AND ANALYSIS

### Property Claims

Plaintiff claims his property was confiscated and lost or destroyed.  He filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities secured by the Constitution or laws of the United States" by a person acting under color of state law.  Accordingly, the initial inquiry and threshold concern of the reviewing court is whether Plaintiff's constitutional rights have been violated.  See Parratt v. Taylor, 451 U.S. 527, 107 S. Ct. 1908 (1981).

The property of which Plaintiff was allegedly deprived can constitute "property" within the meaning of the Due Process Clause of the Fourteenth Amendment and its loss is worthy of redress if the loss implicates constitutional rights.  See id. at 542, 107 S. Ct. at 1916.  However, the Fourteenth Amendment is not a font of tort law to be superimposed upon whatever systems may already be administered by the States.  See Baker v. McCollan, 433 U.S. 137, 99 S. Ct. 2689 (1979).  A constitutional deprivation of property without due process of law, as differentiated from a state tort law claim, must be intentional and plaintiff must allege specific facts which support such a conclusion.

Absent an intentional deprivation of property where the charge only supports a negligent failure by defendants, a constitutional deprivation does not lie.  "[T]he Due

Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty or property." Daniels v. Williams, 474 U.S. 327, 328, 106 S. Ct. 662, 663 (1986).  Moreover, even in instances where intentional deprivation occurs where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated.  See Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 3204 (1984), on remand, 744 F.2d 22 (4th Cir. 1984); Marshall v. Norwood, 741 F.2d 761, 764 (5th Cir. 1984).  Mere assertions of intentionality are not enough in the absence of specific facts supporting the assertions and "even if the taking were intentional, the state could afford the [plaintiff] due process by providing a post-deprivation remedy for the redress of the unforeseeable, unauthorized injury... alleged." Lewis v. Woods, 848 F.2d 649, 652 (5th Cir. 1988).  Louisiana law provides Plaintiff the opportunity to seek redress for his loss, whether intentional or negligent.  See La. Civ. Code art. 2315.

Furthermore, 42 U.S.C. § 1983, does not permit a remedy for the mere violation of prison policies or even state law.  Scheidel v. Secretary of Public Safety & Corrections, 561 Fed. Appx. 426 (5th Cir. 2014) ("violations of prison rules do not alone rise to the level of constitutional violations and, therefore, such claims are not actionable under § 1983."); Sylvester v. Cain, 311 Fed. Appx. 733, (5th Cir. 2009) ("violations of state law and prison regulations, without more, do not state a viable constitutional claim under § 1983"); and Brown v. Williams, 124 Fed. Appx. 907, 909 (5th Cir. 2005) ("a mere violation of state law does not state a constitutional claim under 42 U.S.C. § 1983").

Accordingly, Plaintiff's claims should be dismissed with prejudice as frivolous.

**Legal Access Claims**

Plaintiff claims the law library was insufficient and there were no properly trained law library clerks.  He claims that because of the insufficient law library, he missed deadlines regarding his application for post-conviction relief.  He claims he had to prepare his supervisory writ without a properly trained law library clerk.  He also claims mail delays caused him to miss deadlines with the courts.  Prisoners have a constitutional right of meaningful access to the courts. <u>Degrate v. Godwin</u>, 84 F.3d 768, 768-69 (5th Cir.1996) (quoting <u>Bounds v. Smith</u>, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977)).  However, this constitutional guarantee is not without limitation.  <u>Lewis v. Casey</u>, 518 U.S. 343 (1996) (quoting <u>Turner v. Safley</u>, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261-62, 96 L.Ed.2d 64 (1987)).  In <u>Lewis v. Casey</u>, 518 U.S. 343, (1996), the Supreme Court reviewed its holding in <u>Bounds v. Smith</u>, 430 U.S. 817, (1977) which is the source of a prisoner's constitutional right to "meaningful access to the courts."  While the Supreme Court reaffirmed a prisoner's right of access to the courts in <u>Lewis</u>, the Court limited the parameters of <u>Bounds</u> and set forth a standard to be applied when determining whether to grant relief for an access to the courts violation.  In so holding, the Court noted that a prisoner must show an actual injury, explaining that this requirement is derived from the doctrine of standing.  <u>Lewis</u>, 116 S.Ct. at 2179.  The Court used the analogy of a prisoner who is denied access to that of a healthy prisoner who has been deprived of medical treatment.  In both cases, neither the access deprived prisoner nor the healthy prisoner have sustained constitutional injury, and thus, are not entitled to relief under Section 1983.  The Court emphasized that the court's role is to provide relief to claimants who have suffered actual harm, not to interfere with the management of prisons.

Accordingly, the Fifth Circuit has held that a prisoner cannot prevail on an access to the courts claim without proving an actual injury in non-frivolous litigation as a result of the defendant's alleged unconstitutional conduct.  Ruiz v. United States, 160 F.3d 273, 275 (5th Cir. 1998); Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999).

Application of the actual injury requirement to the instant case supports a finding that Plaintiff's claims are frivolous.  Clearly, Plaintiff has not satisfied the "actual injury" requirement as he makes no claims of injury in his complaint or amended complaints. Plaintiff has failed to demonstrate that he lost the right to commence, prosecute or appeal any suit because of the actions of Defendants.  In fact, Plaintiff was able to fully litigate his application for post-conviction relief in the state court.  See State v. Mace, 2023-KH-1003, 373 So.3d 710 (La. 12/5/23).  He admits that he prepared a supervisory writ.  He also admits in his amended complaint, that at the time he filed his complaint and amended complaint, he had not lost the right to commence, prosecute, or appeal any suit.  Thus, he has failed to state any actual injury.

Accordingly, Plaintiff's claims should be dismissed with prejudice as frivolous.

**Medical Claims**

Plaintiff claims he was denied proper medical and mental health treatment.
Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities" by a person acting under color of state law.  The particular right protected under 42 U.S.C. § 1983 in matters which concern alleged denial of or inadequate medical care is the Eighth Amendment prohibition against cruel and unusual punishment.

The lack of proper inmate medical care rises to the level of a constitutional deprivation under the Eighth Amendment of the United States Constitution only if the evidence shows that the prison officials showed "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976); See also Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978 (1994).    It is only deliberate indifference, "an unnecessary and wanton infliction of pain" or an act "repugnant to the conscience of mankind," that constitutes conduct proscribed by the Eighth Amendment. Estelle, 429 U.S. at 105-06, 97 S. Ct. at 292; See also Gregg v. Georgia, 428 U.S. 153, 96 S. Ct. 2909 (1976).    Further, the plaintiff must establish that the defendants possessed a culpable state of mind.    See Wilson v. Seiter, 501 U.S. 294, 297-302, 111 S. Ct. 2321, 2323-27 (1991); Farmer, 511 U.S. at 838-47, 114 S. Ct. at 1979-84.    In addition, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

In this case, after a thorough review of Plaintiff's complaint, read in a light most favorable to him, the court finds that the facts alleged do not support a finding of deliberate indifference to serious medical needs.    To the contrary, the record demonstrates that Defendants were attentive to the medical needs of Plaintiff.    It has been consistently held that an inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate indifference to serious medical needs.    Norton v. Dimazana, 122 F.2d 286, 292 (5th Cir. 1997); Callaway v. Smith County, 991 F. Supp. 801, 809 (E.D. Tex. 1998); Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); Mayweather v. Foti, 958

F.2d 91 (5th Cir. 1992).  Plaintiff admits that in September of 2021, he was seen by Dr. Camielle and Nurse Smith.  He also admits the Dr. Camielle counseled him and prescribed him medication.  The medication prescribed for him is used to treat the symptoms of depression.  Plaintiff admits that on May 20, 2022, he was seen by Nurse Michelle for his chronic diarrhea and mental health issues.  He admits that on June 8, 2022, he was offered anti-diarrhea medication.  Plaintiff's complaint is devoid of factual allegations that would tend to show Defendants acted with a culpable state of mind or that their actions were "unnecessary and wanton."

Plaintiff disagrees with the treatment Defendants provided him.  He claims he should have been provided counseling with a mental health professional and given a special diet.  As previously discussed, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs.

Plaintiff's allegations, if accepted as true, may amount to a state law claim for negligence, a tort.  However, mere negligence, neglect or medical malpractice does not amount to a denial of a constitutional right as these actions on the part of Defendants do not rise to the level of a constitutional tort. See Daniels v. Williams, 474 U.S. 327, 329-30, 106 S. Ct. 662, 664 (1986); Estelle, 429 U.S. at 106, 97 S. Ct. at 292; Lewis v. Woods, 848 F.2d 649, 651 (5th Cir. 1988).  The fact that Plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act.  See Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985).  Prisoners are not

constitutionally entitled to the best medical care that money can buy. See <u>Mayweather v. Foti</u>, 958 F.2d. 91 (5th Cir. 1992).

Accordingly, Plaintiff's claims should be dismissed with prejudice as frivolous.

Moreover, Plaintiff did not properly exhaust his administrative remedies regarding his May 20, 2022 medical visit claims prior to filing his complaint in the court. Plaintiff filed his complaint on June 8, 2022. He did not receive a response to his May 23, 2022 request for administrative remedy regarding his May 20, 2022 medical visit until June 16, 2022 which was after he filed this complaint.

Congress has commanded that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). Section 1997e requires Plaintiff to properly exhaust available administrative remedies before filing a Section 1983 suit. See <u>Woodford v. Ngo</u>, 126 S.Ct. 2378 (2006). This exhaustion requirement requires proper exhaustion of administrative remedies in accordance with prison procedures, and an untimely or otherwise procedurally defective grievance or appeal will not suffice. <u>Woodford</u>, 126 S.Ct. 2378. The Fifth Circuit has applied the requirement to claims such as the use of excessive force, see <u>Wendell</u>, 162 F.3d at 887, and denial of medical care. See <u>Harris v. Hegmann</u>, 198 F.3d 153 (5th Cir. 1999). Failure to exhaust administrative remedies is an affirmative defense, and "inmates are not required to specifically plead or demonstrate exhaustion in their complaints." <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007). However, dismissal may be appropriate when, the complaint on its face establishes the inmate's failure to exhaust. See

Carbe v. Lappin, 492 F.3d 325, 328 (5th Cir.2007); Hicks v. Lingle, 370 Fed. Appx. 497, 498 (5th Cir.2010).

**Payment of Medical Fees**

Plaintiff complains he had to pay a $7.00 sick call fee for his May 20, 2022 medical visit. Plaintiff does not have a constitutional right to free medical care. Hutchinson v. Belt, 957 F.Supp. 97 (W.D. Louisiana 1996) (citations omitted). Furthermore, Plaintiff does not allege that he was denied medical treatment because he could not pay the fee.

Accordingly, Plaintiff's medical fee claim should be dismissed with prejudice as frivolous.

**Privacy Claims**

Plaintiff claims that on May 20, 2022, Inmate Lofton was present during his sick call and had access to his medical file. He claims that on June 8, 2022, Inmate Lofton was present during the discussion of his grievance in the administrative remedy procedure. He claims this violated his privacy and HIPAA rights.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Plaintiff makes no showing that the medical visit or grievance discussion violated the Constitution and laws of the United States. There is a consensus among the United States Courts of Appeal that prisoners have no absolute constitutional right in the privacy of their medical records. See Walker v. Gerald, 2006 WL 1997635 (E.D. La. 2006) and the cases cited therein.

To the extent that Plaintiff might imply a right and cause of action pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub.L. No. 104-191, §§ 261-264, 110 Stat.1936 (1996), his claim also fails. HIPAA is the federal statute which provides for confidentiality of medical records. However, as further noted in Walker v. Gerald, "... HIPAA provides no express or implied private cause of action for its violation ..." Walker, at 6 and cases cited therein.

"Prisoners cannot enjoy greater privacy protection than individuals in free society, and some amount of sharing of medical information in areas where it might be overheard by other patients-e.g., in hospital emergency rooms, school infirmaries, and the waiting room of a doctor's office-is commonplace." Franklin v. McCaughtry, 110 Fed. Appx. 715, 719 (7th Cir. Sept.7, 2004) (citations omitted). There is no clearly defined law which would require the doctor or nurse to examine and question Plaintiff in a particular setting or in extreme privacy. Furthermore, Plaintiff has not alleged that he suffered any harm or that any of his medical information was used against him by other inmates. See Patin v. LeBlanc, CIV.A. 11-3071, 2012 WL 3109402, at 21 (E.D. La. May 18, 2012), report and recommendation adopted, CIV.A. 11-3071, 2012 WL 3109398 (E.D. La. July 31, 2012).

Accordingly, Plaintiff's claims should be dismissed with prejudice as frivolous.

Moreover, Plaintiff did not properly exhaust his administrative remedies regarding his privacy claims prior to filing his complaint in the court. Plaintiff filed this complaint on June 8, 2022. He did not receive a response to his May 23, 2022 request for administrative remedy which addressed Lofton being present at his May 20, 2022 medical visit until June 16, 2022 which was after he filed this complaint. His claim regarding

Lofton being present at the discussion of his administrative remedy occurred on the day his complaint was filed in this court.   Thus, Plaintiff did not exhaust his administrative remedies prior to filing these claims.   See Carbe v. Lappin, 492 F.3d 325, 328 (5th Cir.2007); Hicks v. Lingle, 370 Fed. Appx. 497, 498 (5th Cir.2010).

**Legal Mail Claims**

Plaintiff claims the facility takes an exorbitant amount of time to process standard first class mail because of the "no paper/no book" policy.   He claims Captain Guss opens and reads every letter.   Plaintiff does not challenge the fact that Captain Guss opens and reads every letter.   Plaintiff claims that on November 27, 2021 and May 30, 2022, he received legal mail which was opened outside of his presence.

The opening of a prisoner's legal mail outside of his presence does not rise to the level of a constitutional violation.   Brewer v. Wilkinson, 3 F.3d 816, 825 (5th Cir. 2009) (recognizing that "the violation of [a] prison regulation requiring that a prisoner be present when his incoming legal mail is opened and inspected is not a violation of a prisoner's constitutional rights" when there is no proof that such tampering was prejudicial to the inmate's access to the courts and when the practice was reasonably related to legitimate penological interests); Henthorn v. Swinson, 955 F.2d 351, 353 (5th Cir. 1992) (rejecting a complaint concerning the opening of legal mail not bearing the required "special mail" inscription outside of an inmate's presence); See also Singletary v. Stadler, 2001 WL 1131949 (5th Cir. 2001) (unpublished per curiam) (affirming that "prisoners do not have a constitutional right to be present when privileged, legal mail is opened and inspected"). This is still true even if the prison has a policy that such mail is to be opened only in the

inmate's presence, because "a prison official's failure to follow the prison's own policies does not, itself, result in a constitutional violation." Samford v. Dretke, 562 F.3d 674, 681 (5th Cir. 2009).

Plaintiff claims legal/privileged mail is not processed correctly. He claims trusties distribute the mail to inmates without verifying their identity. Plaintiff has failed to raise any identifiable constitutional violation. Furthermore, he does not allege that he has suffered any harm because of this process.

Accordingly, Plaintiff's claims should be dismissed with prejudice as frivolous.

**Conditions of Confinement Claims**

Plaintiff filed this complaint pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities" by a person acting under color of state law. The particular right protected under 42 U.S.C. § 1983 in matters which concern alleged unconstitutional conditions of confinement is the Eighth Amendment prohibition against cruel and unusual punishment. Under the Eighth Amendment, prison officials are required to provide humane conditions of confinement, ensuring that inmates receive adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee safety of inmates. See Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970 (1994).

An Eighth Amendment claim has two required components. See Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324 (1991). First, the deprivation alleged must be sufficiently serious. See id., 111 S. Ct. at 2324. "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave" to constitute cruel

and unusual punishment. Id., 111 S. Ct. at 2324 (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399 (1981)).  Second, the prison official must have acted with a sufficiently culpable state of mind. See id. at 305, 111 S. Ct. at 2328; Farmer, 511 U.S. at 838, 114 S. Ct. at 1979.  In prison condition of confinement cases, that state of mind is deliberate indifference, which the Supreme Court defined as knowing of and disregarding an excessive risk to inmate health or safety.  See id., 114 S. Ct. at 1979.  However, mere neglect and/or negligence do not constitute deliberate indifference.   See Fielder v. Bosshard, 590 F.2d 105, 107 (5th Cir. 1997).

Furthermore, this court should consider the duration and the totality of the specific circumstances that constituted the conditions of Plaintiff's confinement.   Palmer v. Johnson, 193 F.3d 346 (5th Cir. 1999).

Plaintiff does not claim that he has been denied hygiene supplies or clothing. Instead, he alleges only that he has not been provided with free hygiene supplies and clothing.   Furthermore, Plaintiff failed to allege that he sustained any harm or injury as a result of not being provided free hygiene supplies or clothing.  In fact, he states that twice he borrowed socks and did not miss meal or pill call.  In this case, Plaintiff states no facts that would satisfy the threshold requirements for an Eighth Amendment violation. Thus, the Court does not consider the deprivations alleged to be sufficiently serious.

Accordingly, Plaintiff's claims should be dismissed with prejudice as frivolous.

**Visitation Claims**

Plaintiff claims CPDC does not allow contact visits.  It is well settled that "visitation privileges are a matter subject to the discretion of prison officials." Berry v. Brady, 192

F.3d 504, 508 (5th Cir. 1999) (quoting McCray v. Sullivan, 509 F.2d 1332, 1334 (5th Cir.), cert. denied, 423 U.S. 859, 96 S.Ct. 114, 46 L.Ed. 2d 86 (1975)).

An inmate has no constitutional right to contact visitation privileges.  See Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed. 2d 418 (1995) (holding that a prisoner's liberty interest is "generally limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."); Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed. 2d 447 (1979) (stating that prison officials should be accorded the widest possible deference in the application of policies and practices designed to maintain security and preserve internal order); Berry, 192 F.3d at 508 (citing McCray, 509 F.2d at 1334).

Accordingly, Plaintiff's claims should be dismissed with prejudice as frivolous.

**Administrative Remedy Process Claims**

Plaintiff claims that on June 8, 2022, he was denied due process in the administrative remedy procedure.  Inmates do not have a constitutionally protected right to a prison administrative grievance procedure. See Oladipupo v. Austin, et al., 104 F.Supp.2d 626 (W.D.La.2000); Brown v. Dodson, et al., 863 F.Supp. 284 (W.D.Va.1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir.1991). A prison official's failure to comply with a state administrative grievance procedure is not actionable under Section 1983 because a state administrative grievance procedure does not confer any substantive constitutional right upon prison inmates. Mann v. Adams, 855 F.2d 639, 640 (9th Cir.1988), cert. denied, 488 U.S. 898, 109 S.Ct. 242, 102 L.Ed.2d 231.

Furthermore, state administrative grievance procedures are separate and distinct from state and federal legal procedures. Thus, a prison official's failure to comply with state administrative grievance procedures does not compromise an inmate's right of access to the courts.  Flick, supra. Thus, insofar as Plaintiff alleges that the defendants failed to comply with a prison administrative grievance procedure, those allegations, standing alone, do not provide an arguable basis for recovery under Section 1983.

Accordingly, Plaintiff's claim should be dismissed with prejudice as frivolous.

Moreover, Plaintiff did not properly exhaust his administrative remedies regarding this claim prior to filing his complaint in the court.  Plaintiff filed his complaint in this court on June 8, 2022.  His claim regarding the administrative remedy process occurred on the day his complaint was filed in this court.   Thus, Plaintiff did not exhaust his administrative remedies prior to filing this claim.  See Carbe v. Lappin, 492 F.3d 325, 328 (5th Cir.2007); Hicks v. Lingle, 370 Fed. Appx. 497, 498 (5th Cir.2010).

**Retaliation Claims**

Plaintiff claims he was retaliated against because he filed this complaint in this court.  He claims Warden Williams threatened him.  He claims he was transferred multiple times and locked in a suicide cell.  He claims that on August 15, 2022, a motion destined for his court was intercepted.

Plaintiff did not properly exhaust his administrative remedies regarding these retaliation claims prior to filing his complaint in the court.  Plaintiff filed his complaint on June 8, 2022.  These claims of retaliation began on June 22, 2022.  Thus, Plaintiff did not exhaust his administrative remedies prior to filing these retaliation claims.  See Carbe v.

Lappin, 492 F.3d 325, 328 (5th Cir.2007); Hicks v. Lingle, 370 Fed. Appx. 497, 498 (5th Cir.2010).

Accordingly, Plaintiff's claims should be dismissed without prejudice for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a).

**Denial of Television Claims**

Plaintiff claims that from August 11, 2022 to August 17, 2022, CPDC blocked all local news channels on all dorm televisions. Prisoners have no constitutional right to watch television because watching television is not one of life's necessities nor is it a basic human need. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); McDonald v. Steward, 132 F.3d 225, 231 (5th Cir.1998); Woods v. Edwards, 51 F.3d 577, 581 (5th Cir.1995).

Accordingly, Plaintiff's claims should be dismissed with prejudice as frivolous.

Moreover, Plaintiff did not properly exhaust his administrative remedies regarding this claim prior to filing his complaint in the court. Plaintiff filed his complaint in this court on June 8, 2022. His claims regarding the denial of local news channels occurred from August 11, 2022 through August 17, 2022. Thus, Plaintiff did not exhaust his administrative remedies prior to filing this claim. See Carbe v. Lappin, 492 F.3d 325, 328 (5th Cir.2007); Hicks v. Lingle, 370 Fed. Appx. 497, 498 (5th Cir.2010).

**Conclusory Claims**

Plaintiff claims his legal mail was delayed. He claims his IRS stimulus check was delayed. He claims his IRS mail containing forms was scanned and not delivered to him until later. He believes this delay may have been because he filed a grievance in the administrative

remedy procedure on May 23, 2022. He claims he was denied access to books, magazines, and/or newspapers even sent directly from the publisher or bookstore.

A Section 1983 plaintiff has long been required to plead his case with "factual detail and particularity," not mere conclusory allegations. Elliot v. Perez, 751 F.2d 1472, 1473 (5th Cir. 1985); Hale v. Harney, 786 F.2d 688 (5th Cir. 1986). The Supreme Court has abolished this heightened pleading standard for claims against municipalities, Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 113 S.Ct. 1160 (1993), but the requirement remains firmly in place for claims against individual public officials. See Schultea v. Wood, 47 F.3d 1427 (5th Cir.1995) (en banc).

In this case, Plaintiff has named individual prison officials as defendants and is therefore required to give factual details regarding his alleged constitutional rights violations. Plaintiff has failed to do so as to these claims even though he has filed a complaint and two amended complaints.

Accordingly, these claims should be dismissed for failure to state a claim on which relief may be granted.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed. See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and

may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact.  See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Accordingly;

**IT IS RECOMMENDED** that Plaintiff's civil rights claims regarding his property, legal access, medical treatment, medical fee, privacy, legal mail, conditions of confinement, visitation, administrative remedy procedure, and television be **DISMISSED WITH PREJUDICE** as frivolous.  **IT IS FURTHER RECOMMENDED** that his conclusory claims be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).  **IT IS FURTHER RECOMMENDED** that retaliation claims beginning on June 22, 2022 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a).

### OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party.  See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 4th day of August 2025.

Mark L. Hornsby
U.S. Magistrate Judge